# EXHIBIT 1

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

File No.

25CV060204-590

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
Trolleys, Inc. dba Sunway Charters

Address
c/o Bell, Davis & Pitt, P.A., 227 W. Trade Street, Suite 1800

City, State, Zip
Charlotte        NC     28202

## VERSUS

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

Name Of Defendant(s)
Carey Limousine DC, Inc. and Carey International, Inc.

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Carey Limousine DC, Inc. | Carey International, Inc. |
| c/o Corporation Service Company, Registered Agent | c/o Corporation Service Company, Registered Agent |
| 2626 Glenwood Avenue, Suite 550 | 251 Little Falls Drive |
| Raleigh      NC    27608 | Wilmington     DE    19808 |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Edward B. Davis | 11/10/2025 | 4:48:42 pm   ☐ AM ☐ PM |
| Bell, Davis & Pitt, P.A. | Signature | |
| 227 W. Trade Street, Suite 1800 | /s/ Mitchell Woodard | |
| Charlotte    NC    28202 | ☐ Deputy CSC ☒ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM ☐ PM |
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 12/23
© 2023 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM  ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 1.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM  ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 2.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 12/23
© 2023 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

TROLLEYS, INC. d/b/a SUNWAY
CHARTERS,

        Plaintiff,

    v.

CAREY LIMOUSINE DC, INC., and CAREY
INTERNATIONAL, INC.

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25 CVS _____

**COMPLAINT**

      NOW COMES the plaintiff, Trolleys, Inc. d/b/a Sunway Charters ("Plaintiff" or

"Sunway"), and makes the following allegations against defendants Carey Limousine DC, Inc.

("Carey Limousine DC"), and Carey International, Inc. ("Cary International") (collectively

"Defendants" or "Carey"):

**PARTIES, JURISDICTION, AND VENUE**

    1.    Plaintiff Trolleys, Inc. d/b/a Sunway Charters ("Plaintiff") is a North Carolina

corporation, registered and authorized to do business in North Carolina with a registered office

and principal place of business in Mecklenburg County, North Carolina.

    2.    Upon information and belief defendant Carey Limousine DC is a Delaware corporation

doing business in the State of North Carolina, with its principal place of business located at 4530

Wisconsin Ave. N.W., Suite 400A, Washington, D.C. 20016.

    3.    Upon information and belief, defendant Carey International is a Delaware corporation

doing business in the State of North Carolina, with its principal place of business in Washington,

D.C.

4.     According to Carey International's website, Carey International owns and operates Carey Limousine DC.

5.     The Court has subject matter jurisdiction over this lawsuit pursuant to N.C.G.S. § 7A-240, *et. seq*.

6.     The Court has personal jurisdiction over Defendants pursuant to N.C.G.S. § 1-75.4. This case involves a plaintiff corporation registered and doing business within the State of North Carolina, foreign entities doing business in the State of North Carolina, and it arises out of a contract entered into in North Carolina and services performed and provided in North Carolina, and conduct directed at North Carolina and causing damage in the North Carolina.

7.     The proper venue and court division for this litigation is the Superior Court Division of Mecklenburg County pursuant to N.C.G.S. § 7A-243, as the amount in controversy exceeds $25,000.00.

## FACTUAL ALLEGATIONS

8.     On September 12, 2022, Plaintiff and Defendants entered into a Shuttle Farm-Out Agreement for Plaintiff to provide transportation services to Carey's clients related to the President's Cup taking place at the Quail Hollow Club in Charlotte, North Carolina, September 19 through 25, 2022 (the "Agreement," attached hereto as **Exhibit 1**).

9.     Regarding invoicing, the Agreement stated in part that Plaintiff must submit all invoices to Carey through email to Thomas.Overman@Carey.com.  Plaintiff's invoices were addressed and delivered to Mr. Overman at Carey International, Inc.

10.     The Agreement further stated regarding payment:  "All payments will be made by November 11, 2022."

11.     Plaintiff provided the agreed upon services pursuant to the Agreement September 16 through September 25, 2022.

12.     For the services provided pursuant to the Agreement, Plaintiff invoiced Carey a total amount of $460,900.00. Of that amount, Carey paid to Plaintiff a total of $333,700.00, leaving an unpaid balance of $127,200.00.

13.     On January 11, 2023, in-house counsel for Carey emailed Lee Helms, Plaintiff's CEO, copying Thomas Overman of Carey and Jacob Hooks, Plaintiff's Director of Operations, stating in the body of the email:

> I am counsel for Carey International, Inc. and have been forwarded the attached invoice #101141. I am investigating the amounts detailed in the invoice and will respond when that investigation concludes. Please direct all future correspondence regarding this matter to my attention. I will be your company's point of contact moving forward.

14.     On February 20, 2023, Jacob Hooks sent an email to Carey's in-house counsel with the subject "Follow Up," stating in the body of the email:

> I have attached the past-due invoice. I have sent this to multiple people on several occasions. I have yet to receive a reply. According to the agreement, payment should have been made on November 11, 2022. I sent this to you several weeks ago, and the invoice appears incorrect. My apologies for that mistake. The balance owed to Sunway Charters by Carey is $127,200.00. I have attached the revised and corrected invoice. Please let me know how I can help you settle this balance.

15.     Despite further correspondence between Mr. Hooks and Carey in February 2023 – including Plaintiff providing furth backup documents and information – Carey has never paid the $127,200.00 balance owed to Plaintiff pursuant to the Agreement.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

16.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

17.     The Agreement is an enforceable contract between Plaintiff and Defendants.

18.     Defendants have breached the Agreement by failing and refusing to pay the unpaid balance of $127,200.00 owed by Defendants to Plaintiff pursuant to the Agreement.

19.     As a result of Defendants' breach of the Agreement, Plaintiff has suffered damages and is entitled to recover from Defendants the amounts owed, jointly and severally, plus interest and any applicable lates fees and/or finance charges.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment)**

20.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

21.     Plaintiff provided services to Defendants for which Plaintiff expected to be paid and Plaintiff also incurred costs in doing so.

22.     Defendants received and accepted such services from Plaintiff under such circumstances that it would be inequitable for Defendants to have received and accepted such services and not pay Plaintiff for such services rendered.

23.     As a result, Plaintiff has suffered damages and is entitled to recover from Defendants the value of the services rendered and the costs Plaintiff incurred in providing and performing such services for Defendants.

WHEREFORE, Plaintiff respectfully prays to the Court as follows:

1.     That Plaintiff obtain a judgment against Defendants, and have and recover from Defendants all damages resulting from Defendants' conduct;

2.     That Plaintiff recover it attorneys' fees and costs to the extent allowed by law;

3.     Trial by jury on all issues so triable; and

4.     That Plaintiff obtain such other relief as the Court deems just and proper.

This the 10th day of November, 2025.

/s/ *Edward B. Davis*
Edward B. Davis, N.C. Bar No. 27546
BELL, DAVIS & PITT, P.A.
227 W. Trade Street, Suite 1800
Charlotte, North Carolina 28202
Telephone: (704) 227-0400
Facsimile: (704) 227-0178
Email: ward.davis@belldavispitt.com

*Counsel for Plaintiff*

# Exhibit 1

**Shuttle FO Agreement**
**President's Cup (Quail Hollow Club)**
**Charlotte, NC**
**September 19 – 25, 2022**



This Farm-Out Agreement is made by and between Carey Limousine DC, Inc., a Delaware corporation ("Carey") and ~Trolleys IncnbaSunwayCh~ ("Farm-Out Company"), a ~NC~ corporation, on this ~24th~ day of ~Sept.~, 2022 (the "Agreement").

WHEREAS, Carey is in the business of reserving and obtaining chauffeured vehicle services for its clients and has extensive experience in making arrangements for and providing chauffeured vehicle services in luxury limousines, sedans, vans, and minibus and motor coach vehicles ("Chauffeured Vehicle Services" and "Chauffeured Vehicles," respectively), throughout the world for all types of individuals, corporations, associations and communities, and desires to work with Client in connection with the meetings and events;

WHEREAS, for overflow and specialty vehicle jobs, Carey may service its clients through a system of independent chauffeured transportation Farm-Out companies, each of which also has its own clients;

WHEREAS, Farm-Out Company operates a chauffeured transportation company;

WHEREAS, Carey desires to obtain the chauffeured vehicle services provided by Farm-Out Company from time to time on behalf of its clients, and Farm-Out Company desires to provide such services to Carey's clients;

NOW THEREFORE, in consideration of good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. <u>Services</u>. Farm-Out Company will provide chauffeured vehicle transportation services to Carey Clients (as defined herein) at times and locations designated in reservations transmitted to Farm-Out Company by Carey and its affiliated companies (the "Services"). Farm-Out Company agrees that it shall perform the Services in a business-like manner and that any and all chauffeurs employed by Farm-Out Company shall have all licenses necessary for the operation of a chauffeured vehicle. Farm-Out Company further agrees that all services will be performed by Farm-Out Company employees, and that it will not subcontract any Services to any entity.

2. <u>Rates for Farm-Out Company Services</u>. Carey will pay the Farm-Out Company based upon paragraph 3 (Compensation) of this Agreement.

3. <u>Compensation</u>.

a. <u>Verified Information, Gratuity, Expenses.</u> Farm-Out Company agrees that compensation for Services shall be computed on the basis of the verified information reported by Farm-Out Company to Carey in an invoice. Carey reserves the right to require Farm-Out

Company to use Carey's invoicing forms or any method acceptable to Carey e-mail is preferred. For the purpose of this section, verified charges shall be based on the cumulative hourly charge or fixed-rate charge as agreed upon between Carey and Farm-Out Company.

Invoices. Farm-Out Company must submit all invoices to Carey through email to Thomas.Overman@Carey.com and their designated Carey Event Coordinator within 48 hours of completion of Services to a Carey Client. If Farm-Out Company fails to submit an invoice to Carey in strict conformance with this Section, Carey will bill Carey Clients at Carey's standard rates, which are subject to change from time to time, and will pay the Farm-Out Company in accordance with that standard rate. All payments will be made by November 11, 2022.

    b. Late Cancellation and No Show Fees. Fees for Carey Client Late Cancellations and No-Shows will be paid as set follows:

        i. Late Fees. Depending on the service type requested by Carey and provided by Farm-Out Company, a late cancellation fee may apply to all transfer reservations cancelled within the minimum time stated by Carey prior to the scheduled city of service pick up time. For hourly service, a late cancellation fee equal to the hourly minimum may apply.

        ii. No Show Fees. For transfer reservations, a no-show fee equal to the base transfer fee, tolls, parking, airport fees and other charges, if applicable, will be billed if the passenger does not arrive, as scheduled, at the designated customer/chauffeur meeting location.

          For hourly service reservations, a no-show fee equal to the hourly minimum for the vehicle, tolls, parking and other charges, if applicable, will be billed if the passenger does not arrive, as scheduled, at the designated customer/chauffeur meeting location.

4. Additional Service Requests. Farm-Out Company expressly agrees that if a Carey Client requests additional Services, Farm-Out Company must obtain a reservation number for such Services from the Meetings and Events Department at Carey International, Inc.'s Worldwide Reservations Office, telephone number (800) 223-9817, and forward an invoice for the Services to Carey.

5. Disputes. Farm-Out Company agrees that for any dispute concerning the correct amount to be billed on an invoice for Services, it shall be Carey's decision to determine the amount to be billed to any Carey Client. Further, the Farm-Out Company agrees that it shall have no recourse or right to contact any Carey Client with respect to billing, nor shall it do so, unless authorized to do so in writing by Carey.

6. Term and Terminations. The term of this Agreement shall commence upon the Effective Date of this Agreement and remain 1till end of event. Carey reserves the right to modify schedules based on client needs up to (7) days, prior to scheduled work start, without penalty. At any time during the course of this Agreement, Farm-Out Company or Carey may terminate this Agreement for Cause upon written notice, provided that the breaching party is notified in writing of the existence of Cause and does not reasonably cure the conditions related to Cause within two (2) days.

"Cause" shall be defined as (a) misconduct of service, (b) the failure to meet the terms and conditions of this Agreement and any Schedule or Exhibit hereto, or (c) failure to make payments under this Agreement.

Either party shall have the right to terminate this Agreement for any reason upon written notice to the other party.

Upon termination of this Agreement, the Farm-Out Company and its chauffeurs will promptly return the data and any Carey Confidential Information (as defined herein) provided by Carey hereunder without retaining a copy thereof.

7.    <u>Relationship of the Parties</u>.  Farm-Out Company will act solely as an independent contractor. Among other things, Farm-Out shall have its own employee chauffeurs, its own vehicles and its own clients. Nothing contained herein will be construed to create the relationship of principal and agent, employer and employee, franchisor and franchisee, partners, or joint venturers. Farm-Out Company understands and agrees that no minimum amount of reservations is guaranteed by Carey, and that trip referrals are made solely in Carey's discretion.

8.    <u>Covenant</u>. Farm-Out Company hereby acknowledges that anyone for whom Farm-Out Company provides Services at the request of Carey is a client of Carey ("Carey Client"). Farm-Out Company, therefore, expressly covenants that neither it nor any of its employees, agents, affiliates and/or Farm-Out Company will directly or indirectly, divert or attempt to divert any business from any Carey Client, or contact, solicit business from, or communicate with any Carey Client other than when providing Services, without obtaining Carey's express written approval. Farm-Out Company further covenants that it will not communicate in any manner and/or display in any manner its company name to Carey Clients while providing Services through any means, including, but not limited to, business cards, signs, marketing materials, or other forms of advertising. Farm-Out Company acknowledges and agrees that this covenant shall survive the termination of this Agreement.

9.    <u>Confidentiality</u>.  During the term of this Agreement, Farm-Out Company may have access to certain financial and business information, data, pricing, business plans, procedures or operations, technology initiatives, systems and security information, client lists, client data, account information, data files, and any and all materials, written, electronically sent, or disk- based concerning Carey, its parent corporation and affiliated corporations ("Carey Confidential Information").

Farm-Out Company acknowledges and agrees, on behalf of itself and its employees that (a) Carey Confidential Information is the sole and exclusive property of Carey; (b) it will keep Carey Confidential Information confidential and will not disclose the same; (c) it will use Carey Confidential Information only as required to provide the Services contemplated by this Agreement; (d) it is specifically and expressly prohibited from using the Carey Confidential Information for its own benefit or in the furtherance of its own business purposes or otherwise; and (e) Farm-Out Company will protect the confidentiality of Carey Confidential Information with the same degree of care as Farm-Out Company uses for its own similar information, but in no event less than the Farm-Out's best efforts. Farm-Out Company acknowledges and agrees that this covenant shall survive the termination of this Agreement.

Farm-Out Company shall not have an obligation of confidentiality with respect to information provided by Carey which: (i) is already known to Farm-Out Company at the time of disclosure or is obtained from a third party without a breach of any non-disclosure obligation; (ii) is publicly available; (iii) is independently developed by Farm-Out Company; or (iv) is required to be disclosed by law or court order (provided, however, that Farm-Out Company shall advise Carey of such requirement in advance of disclosure).

Farm-Out Company acknowledges and agrees that monetary damages may not be a sufficient remedy for a breach of the confidentiality obligations described herein and that in addition to all other rights and remedies which may be available, Carey shall be entitled to pursue equitable relief, including injunctive and specific performance, for any breach by Farm-Out Company of the confidentiality obligations described herein.

10. <u>Warranty</u>. Farm-Out Company warrants that: (a) it has full power and authority to provide the Services to Carey Clients; (b) all Services will be performed by Farm-Out Company in a professional manner, consistent with the standard of skill and care exercised by the leading professionals in the chauffeured transportation industry and in conformance with the requirements of this Agreement; (c) it is in compliance with all local, state, and federal rules, regulations, and laws necessary to perform its obligations under this Agreement; (d) all its chauffeurs are employees, and all meet Carey's Chauffeur requirements set forth in Section 12.

11. <u>Accidents</u>. Farm-Out Company agrees that in the event any accident involving a Carey reservation occurs, Farm-Out Company must immediately report the accident to the local Carey Dispatch Department (800) 223-9817 and follow any and all instructions from the Carey Dispatch Department in addition to any required by law enforcement or emergency personnel. Farm-Out Company further acknowledges and agrees that in the event of any accident, Farm-Out Company will follow the Accident Scene Safety Checklist provided on <u>Schedule B</u>. Farm-Out Company understands and agrees that chauffeurs involved in any accident may be subject to a Post-Accident Drug and Alcohol test, if necessary. Additionally, Farm-Out Company agrees to provide Carey and Carey's insurers (if applicable) with all information, assistance and cooperation which Carey and/or Carey's insurers reasonably request, including but not limited to: complete broker and agent contact information, any claim or suit related documentation, investigative reports or summaries, and copies of insurance policies.

12. <u>Chauffeur Requirements and Training</u>. Farm-Out Company must perform annual background checks, drug testing and alcohol checks within each calendar year, and routine reviews of all chauffeured motor vehicle reports with the appropriate state motor vehicle administrations. Farm-Out Company must provide certain minimum training to all chauffeurs providing Services to Carey Clients, including, but not limited to, relevant geographical and travel information, defensive driving, and chauffeur etiquette. When performing Services for Carey Clients, Farm-Out Company acknowledges and agrees that all chauffeurs will have driver safety training from either Smith System® or National Safety Council (NSC), or comparable driver safety and defensive driving training.

13. <u>Arbitration</u>. Farm-Out Company agrees that any dispute, controversy or claim arising out of this Agreement or its business relationship with Carey shall be settled by arbitration at the offices of Judicial Arbitration and Mediation Services, Inc. (JAMS) or its successor organization for binding arbitration in the District of Columbia by a single arbitrator pursuant to JAMS arbitration rules, except as modified herein. The parties further agree that any such arbitration proceeding must be commenced within one year

4

of the first occurrence of the action or conduct upon which the claim is based and that such arbitration may only proceed on an individual basis. In the event JAMS does not have an office in the District of Columbia at the time the claim is filed, then the claim shall be settled by an arbitrator in a JAMS office that is closest to the District of Columbia. This arbitration provision shall be strictly construed as a material term of this Agreement and as a condition precedent to the commencement of any claim or arbitration. **The parties acknowledge that their relationship arises solely out of this Agreement, and any cause of action between the parties, including allegations for tort or statutory claims, shall be subject to the one-year period for the commencement of claims.** The arbitrator may grant injunctions or other relief in such dispute or controversy. Judgment upon the award of the arbitrator may be entered in any court having jurisdiction. The arbitrator shall apply Delaware law to the merits of any dispute or claims, without reference to the rules of conflicts of law applicable therein. The parties agree that no arbitrator shall have authority to order, authorize or permit any notice or information about an arbitration to be sent to any class or group other than the parties to the individual arbitration. Suits to compel or enjoin arbitration shall be brought in the United States District Court for the District of Columbia, or if that court lacks jurisdiction, in the Superior Court - the District of Columbia – Civil Division. Notwithstanding the foregoing, no party to this Agreement shall be precluded from applying to a proper court for injunctive relief by reason of the prior or subsequent commencement of an arbitration proceeding as herein provided. No party or arbitrator shall disclose in whole or in part to any other person, firm or entity any confidential information submitted in connection with the arbitration proceedings, except to the extent reasonably necessary to assist counsel in the arbitration or preparation for arbitration of the dispute. Confidential Information may be disclosed to (i) attorneys, (ii) parties, and (iii) outside experts requested by either party's counsel to furnish technical or expert services or to give testimony at the arbitration proceedings, subject, in the case of such experts, to execution of a legally binding written statement that such expert is fully familiar with the terms of this provision, agree to comply with the confidentiality terms of this provision, and will not use any confidential information disclosed to such expert for personal or business advantage. Farm-Out Company has read and understands this Section which discusses arbitration. **The Farm-Out Company understands that by signing this Agreement, it agrees to submit any claims arising out of, relating to, or in connection with this Agreement, or the interpretation, validity, construction, performance, breach or termination thereof, to binding arbitration, and that this arbitration provision constitutes a waiver of the right to a jury trial and a waiver of any right to pursue class-wide relief that may exist and relates to the resolution of all disputes relating to this Agreement.**

14.   Data Security. Farm-Out Company agrees to conform to and abide by Payment Card Industry (PCI) and Personally Identifiable Information (PII) Data Security Standards, Sarbanes-Oxley Act related requirements and any other contractual or legal requirements to which Carey is obligated or has committed in regard to data security. These requirements and standards may change over time, and Farm-Out Company agrees to comply with the standards that Carey may require as they are amended.

15.   Permits, Licenses, and Inspections. Farm-Out Company will secure and pay for all licenses, permits, and inspections necessary to conduct the Services. Upon Carey's request, Farm-Out Company will deliver to Carey copies of all permits, written approvals, licenses, and inspections held by Farm-Out Company.

16.   Insurance. Farm-Out Company shall maintain the following insurance coverage with insurance carriers acceptable to Carey, at Carey's sole discretion:

(a) Comprehensive general liability insurance that provides for minimum combined bodily injury and property damage coverage limits of $1,000,000 per occurrence;

(b) All insurance coverage required by federal, state, or local law, including, but not limited to, workers' compensation insurance; and

(c) Comprehensive automobile liability insurance, applying to all owned, non-owned, or hired vehicles used to provide Services under this Agreement with combined bodily injury and property damage coverage limits of $5,000,000 per occurrence.

Prior to execution of this Agreement, Farm-Out Company shall furnish completed Certificates of Insurance to Carey evidencing the above coverage. All certificates shall include:

(d) A provision under which the insurance carrier is required to provide directly to Carey 30 days advance written notice prior to the date cancellation of coverage or material change in coverage takes effect, regardless of whether cancelled by Farm-Out Company or the insurance carrier; and

(e) Evidence acceptable to Carey that Farm-Out Company's comprehensive general liability and automobile liability insurance policies have been endorsed to name Carey and Carey International, Inc. as additional insureds but only with respect to liability incurred by Carey or Carey International, Inc. arising solely out of Services performed for Carey Clients pursuant to this Agreement

(f) An endorsement providing that such insurance afforded by the policy for the benefit of the additional insured shall be primary insurance with respect to any claims or suit arising out of the Farm-Out Company's services provided under this Agreement. Any other insurance maintained by the additional insured shall be excess and non-contributory as respects to any such claims or suit.

Farm-Out Company shall immediately notify Carey of any accident that involves Services in strict accordance with Section 11.

17. <u>Right to Audit and Performance Reviews</u>. Farm-Out Company shall maintain records relating to Services, and all amounts billable to and payments made by Carey, as well as all records relating to equipment, chauffeurs, permits, and licenses, and insurance requirements and standards (collectively the "Services and Standards") for three years after the provision of the Services and the conclusion of any billing and payments in connection therewith, whichever is later. Farm-Out Company agrees to cooperate with Carey and its representatives in the performance of any audit concerning the Services and Standards records. Farm-Out Company acknowledges and agrees that this covenant shall survive the termination of this Agreement.

18. <u>Indemnification</u>. Farm-Out Company will defend, indemnify, protect and hold harmless Carey, its officers, directors, employees, agents, parent corporations and affiliated corporations from and against any and all claims, losses, liens, demands, attorneys' fees, damages, liabilities, costs, expenses, obligations, causes of action, or suits, (collectively "Claims") to the extent that such Claims are caused by, arise out of, or are connected in any way with any act or omission, whether active or passive and whether actual or alleged, or the willful misconduct of Farm-Out Company, its employees, subcontractors or agents; the breach of this Agreement by Farm-Out Company; or property loss, personal injury or death, sustained by any of Carey's Clients arising out of Farm-Out Company's performance of Services.

6

19.    LIMIT ON LIABILITY.  IN NO EVENT SHALL CAREY'S AGGREGATE LIABILITY UNDER THIS AGREEMENT EXCEED THE COMPENSATION ACTUALLY PAID BY AND/OR DUE FROM CAREY IN THE THREE MONTH PERIOD IMMEDIATELY PRECEDING THE JOB GIVING RISE TO SUCH CLAIM.  IN NO EVENT SHALL CAREY BE LIABLE TO ANYONE FOR ANY INDIRECT, PUNITIVE, SPECIAL, EXEMPLARY, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY TYPE OR KIND (INCLUDING PERSONAL INJURY, LOSS OF DATA, REVENUE, PROFITS, USE OR OTHER ECONOMIC ADVANTAGE).  CAREY AND/OR ITS LICENSORS SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR INJURY WHICH MAY BE INCURRED BY FARM-OUT COMPANY, INCLUDING BUT NOT LIMITED TO LOSS, DAMAGE OR INJURY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH THE SERVICES, THE CAREY MOBILE APPLICATION OR SOFTWARE, INCLUDING BUT NOT LIMITED TO THE USE OR INABILITY OF USE THE CAREY MOBILE APPLICATION OR SOFTWARE.

20.    Assignment.  Farm-Out Company may not, directly or indirectly, in whole or in part, assign or transfer this Agreement or delegate any of its obligations under this Agreement without Carey's express written consent.

21.    Notices.  All notices provided in connection with this Agreement must be in writing and be delivered by certified mail or overnight courier, and will be deemed effective upon mailing or couriering to the parties at the following addresses:

      If to Carey:     **ATTN: Carey Meetings and Events**
                         **7445 New Technology Way**
                         **Frederick, MD 21703**

                         **With copy to:  General Counsel**

      If to Farm-Out Company:

22.    Entire Agreement.  This Agreement and any Schedules and/or Exhibits hereto constitute the entire agreement between the parties with respect to the subject matter contained herein and supersedes all prior and contemporaneous understandings, agreements and representations whether oral or written.  No supplement, modification or amendment of this Agreement will be binding unless in a writing and signed or authenticated by an authorized representative of each party.

23.    Waiver.  Failure by either party to enforce any provision of this Agreement shall not constitute a waiver or affect its right to require the future performances thereof nor shall its waiver of any breach of any provision of this Agreement constitute a waiver of any subsequent breach or nullify the effectiveness of any provision.

24.    Severability.  Every term, condition, or provision of this Agreement is severable from others.  If any term, condition, or provision of this Agreement is held to be invalid, unenforceable, or illegal, in whole or in part, the validity and enforceability of the remaining terms, conditions or provisions, or portions of thereof, shall not be affected.

25.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the state of Delaware.

26.     Survival.  The following sections survive termination or expiration of this Agreement and continue in effect: 3, 5, 7, 9, 13, 16, 17, 18, 19, 23, and 25.

*(Signature Page Follows)*

## Vendor Information

| President's Cup | | | |
|---|---|---|---|
| **DATES** | **Daily Flat Rate** | **# of** | **Vehicle Type** |
| 9/19 | $1300 | 6 | Mini bus |
| 9/20 | $1300 | 18 | Mini bus |
| 9/20 | $1500 | 18 | Coach |
| 9/21 | $1300 | 18 | Mini bus |
| 9/21 | $1500 | 29 | Coach |
| 9/22 | $1300 | 18 | Mini bus |
| 9/22 | $1500 | 33 | Coach |
| 9/23 | $1300 | 18 | Mini bus |
| 9/23 | $1500 | 33 | Coach |
| 9/24 | $1300 | 18 | Mini bus |
| 9/24 | $1500 | 42 | Coach |
| 9/25 | $1300 | 18 | Mini bus |
| 9/25 | $1500 | 42 | Coach |
| | | | |
| | | | |
| | | | |
| | | | |

Trolleys Inc dba Sunway Charters
[Farm-Out Legal Name]
a [ North Carolina ] company

By: _Jacob N. Hoke_

Title: _Director of Ops_

Date: _9-12-22_

**Carey Limousine DC, Inc.**
**a Delaware corporation**

By: _____

Title: _SVP Operations_

Date: _9/13/2022_

8

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25-CVS-060204-590

TROLLEYS, INC. dba SUNWAY
CHARTERS,

  Plaintiff,

v.

CAREY LIMOUSINE DC, INC., and CAREY
INTERNATIONAL, INC.,

Defendants.

**AFFIDAVIT OF SERVICE**

     Edward B. Davis, being first duly sworn, deposes and says:

     1.     I am the attorney of record for the Plaintiff in this matter.

     2.     I caused to be served upon defendants Carey Limousine DC, Inc., and Carey International, Inc., copies of the Summons and Complaint.

     3.     Copies of the Summons and Complaint were received by defendant Carey Limousine DC, Inc., c/o its Registered Agent, on December 3, 2025, as evidenced by the FedEx delivery confirmation attached hereto as **Exhibit A**.

     4.     Copies of the Summons and Complaint were received by defendant Carey International, Inc., c/o its Registered Agent, on December 3, 2025, as evidenced by the FedEx delivery confirmation attached hereto as **Exhibit B**.

This the __17__ day of December, 2025.

_____
Edward B. Davis, N.C. State Bar No. 27546
BELL, DAVIS & PITT, P.A.
227 W. Trade Street, Suite 1800
Charlotte, NC 28202
Phone: (704) 227-0400
Email: ward.davis@belldavispitt.com
*Attorneys for Plaintiff*

Mecklenburg County, North Carolina
Signed and sworn to before me this __17__ day
of December, 2025.

_____
Susannah Ray Cook, Notary Public
My commission expires: September 9, 2029

2

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this date served this pleading in the above-entitled action through the Court's electronic filing system and upon the addresses(s) listed below by:

( )    Hand-delivering a copy thereof to the attorney(s);

or

(X)    Depositing a copy hereof in a postpaid wrapper in a post office or official depository by first class mail under the exclusive care and custody of the United States Post Office Department properly addressed to the addressee(s) below;

or

( )    Via Email.

This the _17_ day of December, 2025.

Edward B. Davis

<u>Addressee(s)</u>:

Carey Limousine DC, Inc.
c/o Corporation Service Company, Registered Agent
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

Carey International, Inc.
c/o Corporation Service Company, Registered Agent
251 Little Falls Drive
Wilmington, DE 19808

3



December 08, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 886639265327

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Shipping/Receiving |
| **Signed for by:** | J.Hughs | **Delivery Location:** | 2626 GLENWOOD AVE |
| **Service type:** | FedEx Standard Overnight | | |
| **Special Handling:** | Deliver Weekday;<br>Adult Signature Required | | RALEIGH, NC, 27608 |
| | | **Delivery date:** | Dec 3, 2025 11:48 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 886639265327 | **Ship Date:** | Dec 2, 2025 |
| | | **Weight:** | 0.5 LB/0.23 KG |

**Recipient:**
Carey Limousine DC, Inc., c/o Corporation Service Company,
Registered Agent
2626 Glenwood Avenue
Suite 550
RALEIGH, NC, US, 27608

**Shipper:**
Susannah Cook, BELL, DAVIS & PITT P.A.
227 W. Trade Street
Suite 1800
Charlotte, NC, US, 28202

**Reference**            20034-1



J. HUGHS
#20, 11:49, 5 Del, 0 NonDel



EXHIBIT
A

Thank you for choosing FedEx



December 08, 2025

Dear Customer,

The following is the proof-of-delivery for tracking number: 886639369417

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Shipping/Receiving |
| Signed for by: | R.Macarthur | Delivery Location: | 251little Falls |
| Service type: | FedEx Standard Overnight | | |
| Special Handling: | Deliver Weekday;<br>Adult Signature Required | | WILMINGTON, DE, 19808 |
| | | Delivery date: | Dec 3, 2025 11:08 |

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 886639369417 | Ship Date: | Dec 2, 2025 |
| | | Weight: | 0.5 LB/0.23 KG |

**Recipient:**
Carey International, Inc., c/o Corporation Service Company,
Registered Agent
251 Little Falls Drive
WILMINGTON, DE, US, 19808

**Shipper:**
Susannah Cook, BELL, DAVIS & PITT P.A.
227 W. Trade Street
Suite 1800
Charlotte, NC, US, 28202

Reference                20034-1





Thank you for choosing FedEx